## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **MARVEL JONES,** | ) | **CASE NO. 4:06CV3314** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **v.** | ) | **AND ORDER** |
| | ) | |
| **ROBERT HOUSTON, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This lawsuit was originally filed by 34 plaintiffs on December 29, 2006.  See Filing No. 1.   Thirty-three of these plaintiffs have dismissed their claims voluntarily, leaving Marvel Jones ("Jones"), a prisoner, as the sole remaining plaintiff.   Following dismissal of the 33 other plaintiffs, Jones was given leave to file an amended complaint.  His amended complaint (hereafter "complaint") was filed on September 19, 2007.  Filing No. 113.  Jones is proceeding in forma pauperis.  See Filing Nos. 88, 96 & 101.  The court now conducts an initial review of the complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

### INITIAL REVIEW OF COMPLAINT

#### A.    Summary of Complaint

Jones's complaint consists of 17 pages of allegations and 31 exhibits, totaling 74 pages.   Filing No. 113.  He brings this suit on behalf of himself and the putative class of all other inmates confined at any location within the Nebraska Department of Corrections Services ("NDCS") from 1997 to the date of his complaint. Jones is an inmate at the Tecumseh State Correctional Institution ("TSCI").  He seeks recovery for alleged individual and systematic denial of constitutional rights by "Robert Houston, Fred Britten, Michelle Hillman, Janssen Williams, Dr. with Correct Care Solutions, Known and Unknown defendants, Named and Unnamed John and Jane Doe's 1 thru 1,000 sued in their

individual and official and professional capacities."  Filing No. 113, ¶¶ 6-7, 54.  Jones has

listed a multitude of factual allegations which he characterizes as violations of "due

process, equal protection, and substantial rights under the law."  The specific allegations

are described hereafter in the "Discussion of Claims."  Jones seeks compensatory and

punitive damages, and special damages for his out-of-pocket expenses. Filing No. 113, p.

16.  He does not seek prospective relief.

### B.      Applicable Legal Standards on Initial Review

Jones is proceeding in forma pauperis, and is a prisoner seeking recovery from

governmental entities and officers and employees of governmental entities.  Accordingly,

the court must review his complaint to determine whether summary dismissal is

appropriate.  See 28 U.S.C. §§ 1915(e)(2) and 1915A.  The court must dismiss his

complaint or any portion of it that states a frivolous or malicious claim, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915(e)(2)(B).  Thus, where a pro se plaintiff can

prove no set of facts that would entitle him to relief, the complaint must be dismissed.

Conley v. Gibson, 355 U.S. 41, 45-46 (1967); Burke v. North Dakota Dept. of Corrections

and Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002).

### C.      Discussion of Claims.

1.      Named Defendants.

Jones does not allege what acts were performed or programs and policies were

implemented by the named defendants in either their official or individual capacities.

Based on his complaint, he has been an inmate at TSCI since February 2002.  The

allegations of his complaint refer to conditions and events that occurred at TSCI alone.

Based on the attachments to the complaint, of the defendants named, Britten was the TSCI warden when the acts alleged by Jones occurred.  The remaining named defendants, Houston, Hillman, Williams, and Dr. With Correct Care Solutions, are never mentioned in the complaint or its attachments.  The complaint does not describe "Named and Unnamed John and Jane Doe's 1 thru 1,000," or set forth the allegedly unconstitutional acts they committed.  Accordingly, the claims against defendants Houston, Hillman, Williams, Dr. With Correct Care Solutions, and "Named and Unnamed John and Jane Doe's 1 thru 1,000," in their official and individual capacities, must be dismissed.  The only defendant remaining is Francis Britten in his individual and official capacity.

    2.    <u>Lack of Standing</u>.

Jones purports to bring this case on behalf of himself and the class of all inmates confined at any location within the Nebraska Department of Correctional Services from 1997 until the date his complaint was filed.  Based on the facts alleged in the complaint, the plaintiff, an inmate at TSCI, cannot adequately represent the interests of all inmates housed at every facility within the NDSC system, or prove the existence of commonality and typicality as required under Rule 23(a) of the Federal Rules of Civil Procedure. Accordingly, Jones's purported class claims must be dismissed.  His complaint is therefore limited to those claims seeking recovery on his own behalf.

As to many of Jones's allegations, he does not allege any personal injury or impact caused by the defendants' alleged misconduct.  Specifically, he does not allege that his rights were violated by the following prison policies or conditions:

<u>Inadequate Access to the Law Library, Legal Supplies and Legal Help</u>. Specifically, Jones alleges:
- The law library and computer room are too small and too noisy.

3

- The hours of library access are unduly limited.
- Inmates needing a restroom break while working in the law library have their library access time cut short because they must leave to use a restroom and are not allowed to return.
- The library lacks enough computers, hard-bound case reporters, typing ribbons, tape, whiteout, and typing paper.
- Copies of legal papers cannot be obtained after 3:00 p.m. on weekdays or at any time on weekends, holidays, or the day after holidays.
- Inmates must sign in at the library, and if they fail to do so, their access will be withheld for fourteen days.
- The prison staff and inmates working at the library are not legally trained.
- Those inmates in protective custody, or assigned to worker or drug units, are limited to one hour of library time a week unless they have a court date or brief deadline.  Filing No. 113, ¶¶ 44, 47-49 and ex. 31.

Failure to pay wages.  Jones alleges TSCI inmates are required to work for a private medical provider and a private food service without payment of wages as required under Nebraska law.   Filing No. 113, ¶¶ 35-36.

Improper Medical Care.
Jones alleges:
- TSCI inmates are not getting the medical care they deserve.  Filing No. 113, ¶ 35.
- TSCI inmates, including those who are elderly, frail and mentally ill,  must stand in the winter cold and the wind to receive their medications. Filing No. 113, ¶ 37.

Lack of Access to Job Training.  Jones alleges TSCI inmates have less access to paying jobs than inmates housed at other NDCS locations. Filing No. 113, ¶ 50.

Poorly Trained and Supervised Prison Staff.
Jones alleges:
- TSCI prison officers are hostile, disrespectful, and unprofessional, and they attempt to goad inmates into causing problems.
- TSCI prison officers retaliate against inmates for filing grievances, beat the inmates, and file false disciplinary charges.    Filing No. 113, ¶¶ 51-53.

Unwarranted Dress Code.  Jones alleges TSCI  harasses  inmates who wear hats, "doo rags," and "shades" in the dining halls.  Filing No. 113, ¶ 45

Improper Use of Administrative Segregation.  Jones alleges that his fellow inmates have been placed in Administrative Segregation without good reason and are not timely released.  Filing No. 113, ¶ 46.

Improper Drug Offender Classification Program.  Jones alleges that the NDCS Drug Offender Classification Program implemented on July 2, 2001 permits multiple punishments and the suspension of telephone privileges. Filing No. 113, ¶¶ 10, 14 & exs. 3, 7.

Unhabitable and Unfit Facility.
Jones alleges:

• The land underlying TSCI was previously farm land, and the lingering chemical and livestock refuse contamination causes sickness among inmates. Filing No. 113, ¶ 38.
• TSCI is overcrowded, and NDCS improperly houses inmates at TSCI who are serving sentences of less than 10 years to justify keeping the facility open.  He claims NDCS wants to keep TSCI open because it is 100 miles from Lincoln, 150 miles from Omaha, and therefore beyond the range of supervision.  Filing No. 113, ¶ 52.

Jones does not allege that he worked for TSCI's medical or food service provider for free; was denied access to necessary medical care; stood in the cold and wind waiting for medication; needs job training not provided at TSCI; was placed in Administrative Segregation without due process; was not allowed to dress as he wanted; was taunted or beaten by prison officials; was falsely charged and disciplined without due process; or is subject to the NDCS Drug Offender Classification Program.  Jones does not allege that he is housed in an overly crowded cell, nor does he allege any personal harm caused by incarceration in a facility built on farm land.  Jones has no constitutionally protected interest in being housed only with those inmates who are serving sentences exceeding 10 years.

Although the existence of this lawsuit establishes that Jones is pursuing legal proceedings, he does not allege that he was deprived of access to law library resources, or that he was injured or prejudiced by TSCI's law library accommodations, bathroom policy, sign-in policy, copying hours, or hours of operation.  "Unless inmates are denied complete access to the law library, they must assert actual injury or prejudice."  Hamm v.

Groose, 15 F.3d 110, 112 (8th Cir. 1994). "[A]n inmate cannot bring a denial-of-access claim on behalf of another inmate who is able to bring such a claim in his or her own name." Hamm, 15 F.3d at 112 (dismissing plaintiffs' claims that prison managers and supervisors failed to correct the law library problems, failed to properly train and supervise library employees, and for failed to implement an adequate law library policy).

Based on the allegations in the complaint, Jones lacks standing to bring the claims outlined in this section.

> Federal courts only have jurisdiction to hear actual cases and controversies. U.S. Const. art. III, § 2, cl. 1.  Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. . . .  The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . .  A party must satisfy constitutional standing requirements for its case to proceed to adjudication. . . . A party has standing to bring a claim if it has suffered some actual or threatened injury.
>
> . . .
>
> In order to demonstrate standing, a plaintiff must demonstrate that he has suffered an injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.

County of Mille Lacs v. Benjamin,  361 F.3d 460, 463 (8th Cir. 2004)(internal citations and quotation marks omitted).

Accordingly, Jones's claims for relief based on the allegations in paragraphs 10, 14, 35, 36, 38, 44, 45, 46, 47, 48, 49, 50, 51, 52, and 53, and supported by exhibits 3  and 31 of his complaint are dismissed.  Moreover, to the extent paragraph  37 alleges that TSCI inmates must stand in the cold and wind to receive medications, this claim must be dismissed.  Jones lacks standing, and the court therefore lacks jurisdiction to resolve these claims.

3.    The Remaining Claims.

6

Interpreted liberally, Jones claims his rights have been violated because:
• His cell was searched and his dictionary confiscated without reason.
• The TSCI facility was repeatedly and unnecessarily locked down.
• His mail was not delivered and legal mail was opened before delivery.
• TSCI refused to allow him a furlough to attend his sister's funeral.
• TSCI provided inadequate and contaminated food, and made him wait in line twenty to thirty minutes to get it.
• He was required to stand in the cold and wind four to five times a day without shelter.
• His point classification has not been changed and the point classification system is discriminatory.
• Untrained and uncertified personnel collected his urine.
• TSCI withdrew 5% of his wages and refused to return the money.
• TSCI charges a 5% canteen service charge.

Each of these claims will be addressed.

a.    Unwarranted Cell Search.

Jones claims TSCI prison officers searched his cell on March 29, 2002, and seized his dictionary.   Filing No. 113, ¶ 8 & ex. 1.  To the extent Jones claims this search was unwarranted and therefore violated rights protected under the Fourth Amendment, the claim must be dismissed.  "The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  Hudson v. Palmer, 468 U.S. 517, 526 (1984).  "Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries."  Hudson, 468 U.S. at 526.

Although § 1983 relief may be available when prison officials intentionally deprive an inmate of his property without due process, (see Hudson, 468 U.S. at 529), Jones has not alleged any basis for asserting this claim against any of the named defendants, including Britton.  "It is well settled that § 1983 does not impose respondeat superior liability."  Hughes v. Stottlemyre, 454 F.3d 791, 798 (8th Cir. 2006).  To state a § 1983 claim, Jones must allege that the defendant was personally involved in or had direct

7

responsibility for incidents that resulted in injury.  <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985).  There is no claim that Britten confiscated Jones's dictionary, implemented policies permitting unlawful confiscation of inmate property, or failed to train or supervise prison officers conducting cell searches.

Jones's claim for § 1983 relief based on paragraph 8 and exhibit 1 of his amended complaint must be dismissed for failure to state a claim.

      b.   <u>Unnecessary lock down of TSCI.</u>

Jones alleges his rights were violated by seven separate lock downs of the TSCI facility.  The exhibits to the complaint, which are incorporated into the complaint by reference, (Fed . R. Civ. P. 10(c)), provide additional facts supporting these claims.  The following outlines Jones's lock-down claims.

<u>April 25, 2001</u> (mistyped as April 25, 2002, in the complaint):

The plaintiff alleges TSCI was placed in lock down on April 25, 2001, for unknown reasons.  Filing No. 113, ¶ 9.  The "Memorandum" to the inmate population dated April 26, 2001, explained that the lock down was initiated on April 25, 2001 due to disruptive and inappropriate behaviors, and was modified on April 26, 2001, to resume access to showers, phone calls, ice, hot water, trash removal, and cleaning.  Filing No. 113, ex. 2.

<u>February 27, 2002, to March 4, 2002</u>:

Jones alleges TSCI was placed in lock down from February 27, 2002, until March 4, 2002, for "for reasons unknown as of this day."  Filing No. 113, ¶¶  11-12 & exs. 4-5. The "Memo to the Inmate Population" dated March 1, 2002, explained "this lockdown status was necessary due to multiple comments from inmates in the General Population that a disruption was going to occur and inmates were being threatened with violence if

8

they did not cooperate with the disruption." Filing No. 113, ex. 4. On March 4, 2004, the inmates were notified that "[b]arring any further security concerns, the decision has been made to discontinue the lockdown status during the breakfast meal on Tuesday, March 5, 2002." Filing No. 113, ex. 5.

June 24, 2002:

Jones alleges TSCI was placed in lock down on June 24, 2002, for "reasons unknown as of this day." Filing No. 113, ¶ 13 & ex. 6. Britten's "Memo to the Inmate Population" dated June 24, 2002, explained "this lockdown was necessary due to multiple comments from inmates in the General Population that an organized protest/disruption to the routine operation of the TSCI was going to occur in the immediate future, including as early as June 24, 2002. . . . Planning and participating in such an organized disruption creates a very serious threat to the safety, security and good order of the institution. This type of activity cannot and will not be allowed." Filing No. 113, ex. 6.

May 2002 to July 2, 2002:

Jones alleges TSCI was placed in lock down from May of 2002 until July 2, 2002," for reasons unknown as of this day." Filing No. 113, ¶ 15. Jones does not allege what restrictions were placed on him during this alleged lock down. His exhibit in support of this claim states that a modified lock down was scheduled to end during the lunch hour on July 2, 2002. Filing No. 113, ex. 8.

November 6, 2002, to November 19, 2002:

Jones alleges TSCI was placed in lock down from November 6, 2002, until November 19, 2002, because of an alleged physical altercation among inmates. He alleges that punishing all inmates for the actions of a few violates the rights of those not

9

involved in the altercation.  Filing No. 113, ¶¶ 16-18 & exs. 6 & 9-11.  Britten's "Notice to Inmates" dated November 6, 2002, states:

> The Tecumseh State Correctional Institution is on a modified lockdown due to a series of physical altercations that occurred in the gymnasium on Wednesday, November 6, 2002.  These altercations involved a large number of inmates and created a threat to the safety, security, and good order of the institution. Due to concerns that there may be further physical confrontations, the Tecumseh State Correctional Institution will remain on modified lockdown until this matter is thoroughly investigated and it is determined that the facility can safely return to normal operating procedure.
>
> Inmates will be allowed to take showers, make telephone calls, receive visits, clean their cells and go to medical passes as directed by staff.  Inmates involved in essential work assignments will be permitted to work as needed. Efforts will be made to honor canteen for the units scheduled.

Filing No. 113, ex. 9.  The modified lock down gradually became less restrictive until it was eventually lifted on November 19, 2002.  Filing No. 113, ex. 11.

February 3, 2004:

Jones alleges TSCI was placed in lock down on February 3, 2004, for "reasons unknown as of this day."  Filing No. 113, ¶ 20 & ex. 13.   The "Memo" from Britten to TSCI inmates dated February 3, 2004, explained that during the modified lock down, box lunch meals were served in the inmates' rooms, four inmates at a time were allowed to use the shower and telephones, and access to the law library was permitted if needed.  The lock down remained in effect for one day.  Filing No. 113, ex. 13.

March 3, 2004, until June 14, 2004:

As to the seventh alleged lock down, Jones alleges TSCI was placed in lock down from March 3, 2004, until June 14, 2004 "for allegations that staff members were threatened by other inmates (a few inmates)."  Jones alleges the lock down continued for no good reason.  He claims that although the lock down ended on June 14, 2004, the

10

inmates were still not afforded their pre-lock down freedom to move about; for example, they were not allowed to use day rooms.  Filing No. 113, ¶¶ 21-32 & exs. 14-20 & 22-25.

Jones's complaint includes several attachments supplementing the factual allegations of this claim.  These attachments state:

- The TSCI inmate population was notified on March 3, 2004, that the facility was on a "modified lock down for an indefinite period of time . . . due to assaults on staff members and threats of future assaults on staff."  Filing No. 113, ex. 14.

- The TSCI inmate population was notified on March 11, 2004, that "[s]howers, personal phone calls, cell cleaning, and job assignments continue on a limited basis," meals were being served primarily in the dining halls, and access to the law library and legal phone calls were permitted as needed.  Filing No. 113, ex. 15.

- The TSCI inmate population was notified on March 26, 2004, that "[a]ctivities such as showers, personal phone calls, cell cleaning, etc. will continue. Yard times will begin next week. A schedule for haircuts will be developed in the near future."  Filing No. 113, ex. 16.

- The TSCI inmate population was notified on April 5, 2004, that "[y]ard time in the Housing Units started recently. This activity appears to be going well and will continue and possibly increase, if no problems are encountered. Mental Heath programming appears successful as well. Haircuts will begin on the units this week. . . . We will continue to incorporate activities and programming into the daily routine when suitable."  Filing No. 113, ex. 17.

- As of April 27, 2004, inmates were allowed to shower daily, cell cleaning was permitted once a week, yard access was allowed on Tuesday and Thursday, and phone calls were permitted as scheduled.  Filing No. 113, ex. 18.

- The TSCI inmate population was notified on May 6, 2004, that "[e]veryone is now able to pick up hot water and ice during cell cleaning, showers, porter jobs, or when returning from meals, work, passes, Mental Health, Education, Law Library, etc. . . . Yard time in the Housing Units is going well.  The Housing Unit schedules are being modified to provide for 3 days of yards and 2 days of cell cleaning. . . .  Activities being considered for possible inclusion in the daily schedule are; NRTS, religious services, intramural sporting/competitive activities, and future availability of ice cream through the canteen. Again, these activities can only begin, and more added, if

11

conditions remain safe and secure for all involved."   Filing No. 113, ex. 19. See also Filing No. 113, ex. 20.

- The TSCI inmate population was notified on May 28, 2004, that some inmates were "taking an excessive amount of time by delaying in the dining hall, and/or making laps of the yard rather than returning to their unit," thereby creating continuing concerns.  Filing No. 113, ex. 22.

- The problem increased.  The TSCI inmate population was notified on June 4, 2004, that access to the dining area would be permitted on a rotational basis only in an effort "to manage and control the inmate activity and movement at TSCI to ensure a safe and secure environment."   Filing No. 113, ex. 23.

- The TSCI inmate population was notified on June 14, 2004, that the facility would "return to normal operations on Monday, June 14, 2004, for activities outside of the housing units."  However, day rooms remained closed and housing activities were still restricted, but to a lesser degree.  Filing No. 113, ex. 24.

- Minimal access to the day rooms began on December 27, 2004.  Filing No. 113, ex. 25.

In addition to alleging that the foregoing lock downs were unwarranted and, as such, violated Jones's constitutional rights, he claims that during the 2001 and 2002 lock downs, the February 2004 lock down, and from March 3, 2004, until April 27, 2004, during the seventh lock down, TSCI inmates were not allowed to use the small yard, take a shower, or clean their cells.

Although Jones claims the previously described lock downs violated his "due process, equal protection, and substantial rights under the law," the lock downs were not imposed on Jones for disciplinary reasons, but upon the entire TSCI inmate population for security and safety reasons.  Jones has failed to allege that he was treated any different than any other similarly situated inmate, or that his due process rights were implicated by the prison's use of lock down to preserve or restore prison security.  See Sandin v. Conner,

12

515 U.S. 472 (1995)(holding administrative or punitive segregation is rarely the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest); Rust v. Grammer, 858 F.2d 411, 413 (8th Cir. 1988)(holding lock down of maximum security cells in adjustment center of state prison to regain control of a disruptive situation did not violate the due process clause). The complaint fails to allege a due process or equal protection claim related to any of the lock downs described in the complaint.

Jones's allegations regarding lack of access to showers and cell cleaning during the lock downs raise Eighth Amendment issues. The court specifically notes that the factual basis for these Eighth Amendment allegations is seriously undermined by documents Jones attached to the complaint. However, very liberally construing the complaint, Jones may be claiming that although inmates were notified that showers and cell cleaning would be available, the inmates were never actually allowed to take a shower or clean their cells.

"The Constitution does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991)(internal citations and quotation marks omitted). However, inmates are entitled to "reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989). "[T]he length of time a prisoner is subjected to harsh conditions is a critical factor" in determining if an Eighth Amendment violation has occurred. Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996).

The April 25, 2001, and the February 3, 2002, lock downs each lasted one day. The February 27, 2002, lock down lasted six days. The lock down beginning on June 24, 2002,

13

must have ended on July 2, 2002, (see Filing No. 113, ¶ 15 & ex. 8), and therefore lasted, at most, nine days.  The lock down beginning on November 6, 2002, lasted thirteen days. Even assuming Jones was not permitted to shower, clean his cell, or have access to the small yard during these lock downs, he has not thereby raised an Eighth Amendment claim of cruel and unusual punishment.  "[A] two-week suspension of shower privileges does not suffice as a denial of "basic hygienic needs."  McCoy v. Goord, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003).  Russell v. Enser, 496 F. Supp. 320 (D.S.C. 1979)(holding lack of shower assess for eight days was likely unpleasant but was not cruel and unusual punishment). Likewise, the plaintiff's alleged inability to clean his cell for up to thirteen days does not constitute cruel and unusual punishment.  See e.g. White v. Nix, 7 F.3d 120, 121 (8th Cir. 1993)(holding a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation because of the "relative brevity" of his stay).

The allegations in paragraphs 9, 11, 12, 13, 16, 17, 18, and 20, and exhibits 2, 4, 5, 6 , 9, 10, 11 and 13 fail to support any claim for relief under 28 U.S.C. § 1983.

As to the remaining lock downs, Jones alleges TSCI was in lock down from May 2002, until July 2, 2002, (Filing No. 113, ¶ 15), an allegation difficult to square with an alleged lock down beginning on June 24, 2002.  See Filing No. 113, ¶ 13 & ex. 6.  He also alleges the seventh lock down began on March 3, 2004, and claims that as to all lock downs beginning before April 27, 2004, TSCI inmates were denied access to showers or cell cleaning.  Filing No. 113, ¶ 25.  Interpreted liberally, Jones claims he was not allowed to shower or clean his cell from May 2002 until July 2, 2002, and from March 3, 2004 until April 27, 2004.   Assuming the truth of these allegations, paragraphs 15, 21, 22, 23, 24,

14

and 25, and exhibits 8, 14, 15, 16, 17, and 18 adequately raise an Eighth Amendment claim.

      c.   <u>Undelivered Mail</u>.

      Jones alleges that on eight separate occasions, his legal mail was opened outside his presence, (Filing No. 113, ¶ 42 & ex. 30); the Clerk of the Supreme Court sent Jones a letter on March 10, 2003, but he never received it; (Filing No. 113, ¶ 19 & ex. 12); and his mother sent him a photograph, but the letter was delivered to him without the photograph.  Filing No. 113, ¶ 33 & ex. 26.  As to the envelopes of "legal mail" allegedly delivered already opened, the attachments to the complaint establish that none of the return addresses on these envelopes revealed that they likely contained confidential legal documents or legal filings in a pending case, and the return address on the only envelopes marked "privileged correspondence" identified the sender as an inmate in another NDCS facility.  See Filing No. 113, ex 30 (A-J).

      Regarding Jones's mail from his mother, a "prisoner's entitlement to delivery of packages from family members is not a right 'rooted in the traditions and conscience of our people,'"and is not protected under the due process clause.  <u>Weiler</u>, 137 F.3d at 1051.  Although "[a] prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts," (<u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998)), Jones does not allege his legal mail was opened outside his presence or was not delivered pursuant to any prison policy.  Jones also does not allege that Britten obstructed delivery or opened Jones's legal mail, or that any of Jones's alleged mailing problems were caused by anything other than negligence.  "[I]nadvertent opening of legal mail cannot be actionable under § 1983."  <u>Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997).

15

Jones's claim for § 1983 relief based on paragraph 19, 33, and 42, and exhibits 12, 26, and 30 of his complaint must be dismissed for failure to state a claim.

      d.   <u>Denied Funeral Release</u>.

Jones alleges that when his sister died in February 2004, TSCI would not permit him to attend the funeral because he refused to provide a DNA sample.  Filing No. 113, ¶ 34. The prison's refusal to grant Jones a furlough to attend his sister's funeral did not violate his constitutional rights.  <u>Merritt v. Broglin,</u> 891 F.2d 169 (7th Cir. 1989)(holding an inmate had not constitutionally protected liberty interest in attending his stepfather's funeral); <u>Lamb v. Burke</u>, 1995 WL 371648, *1 (6th Cir. 1995)(holding an inmate had no constitutionally protected liberty interest in attending his mother's funeral).  Jones's claim based on denial of funeral leave, as set forth in paragraph 34 of his complaint, must be dismissed.

      e.   <u>Inadequate Food and Food Service</u>.

Jones alleges that TSCI inmates have to wait in line for twenty to thirty minutes for meals, and are served insufficient and contaminated food.  Filing No. 113, ¶ 36.  Being required to wait thirty minutes in a cafeteria line does not deprive Jones of any "civilized measure of life's necessities . . . sufficiently grave to form the basis of an Eighth Amendment violation."  <u>Wilson</u>, 501 U.S. at 298.   However, prison officials are required to provide a nutritionally adequate diet, and food that is not contaminated.  <u>Wishon v. Gammon</u>,  978 F.2d 446, 449 (8th Cir. 1992); <u>Divers v. Department of Corrections</u>, 921 F.2d 191, 194 (8th Cir. 1990).  To the extent paragraph 36 of the complaint alleges TSCI failed to provide Jones with adequate and uncontaminated food, his complaint states a claim on which relief may be granted.

      f.   <u>Unnecessarily Subjected to Cold, Windy Weather</u>.

Jones alleges that as a TSCI inmate, he has been required to stand outdoors in unbearable, constant, and high velocity winds four to five times a day without access to shelter.    Filing No. 113, ¶ 37.    Requiring inmates to be exposed to sub-freezing temperatures and significant wind chills without access to protection from the elements can rise to the level of an Eighth Amendment violation.  See Gordon v. Faber, 973 F.2d 686, 687 (8th Cir. 1992).  Interpreted liberally, paragraph 37 of the complaint states a potential Eighth Amendment claim based on improper and unnecessary exposure to cold and wind without access to shelter.

g.    Discriminatory Point Classification System

Jones alleges that the TSCI point classification system discriminates against male prisoners because female prisoners can earn points for reclassification more easily than male prisoners.  The plaintiff claims he has been denied reclassification for five years, (see Filing No. 113, ¶ 39), but he does not allege being treated differently than similarly situated female prisoners.  The complaint fails to state a equal protection claim related to TSCI's point classification system.  Peck v. Hoff, 660 F.2d 371, 373 (8th Cir. 1981)(holding that inmate who failed to allege that he or class to which he belonged received treatment from classification board that was invidiously dissimilar to that received by other inmates did not state an equal protection claim).

h.    Untrained Urine Collectors.

Jones alleges that on at least thirty occasions dating back to February 1, 2002, he was required to provide urine samples to prison staff who were not qualified or certified by the Nebraska Department of Human and Health Services to collect such samples.  Filing

17

No. 113, ¶ 40.  Irrespective of what Nebraska law may require, Jones has no federal constitutional right to have only trained and certified personnel collect his urine.

The allegation set forth in paragraph 40 of the complaint provides no basis for recovery.  Any alleged claim based on this allegation is  frivolous and must be dismissed.

i.      5% wage withdrawal.

Jones alleges that although all prisoners have 5% of their wages withheld, unlike those serving a life sentence, he does not receive his money back from the state.  Filing No. 113, ¶ 41.  "There is no constitutional right to prison wages and any such compensation is by the grace of the state."  Jennings v. Lombardi, 70 F.3d 994, 995 (8th Cir. 1995).  Under Nebraska statutory law, inmate wages can be withheld for several specified reasons in accordance with regulations adopted by the NDCS.  Neb. Rev. Stat. 83-183.01; Meis v. Grammer, 226 Neb. 360, 368, 411 N.W.2d 355, 360 (1987).  Therefore, Jones cannot claim the prison's act of withholding of five percent of his wages deprives him of any constitutionally protected property interest.  Sigler v. Lowrie, 404 F.2d 659, 662 (8th Cir. 1968)(holding that no federal right was deprived by warden's withholding of all or any portion of an inmate's earnings until discharge in accordance with Nebraska law).  See also Rochon v. Louisiana State Penitentiary Inmate Account, 880 F.2d 845 (5th Cir. 1989)(holding no prisoner has a constitutional right to withdraw funds from his savings account prior to discharge or parole for any use other than those enumerated by state statute).

To the extent Jones claims his equal rights have been violated because inmates serving life sentences are reimbursed for the wages withheld by the state while he receives no such reimbursement, his claim must be denied.   Pursuant to Nebraska law, inmate

18

wages can be withheld to "provide for funds payable to the person committed to the department upon his or her release." Neb. Rev. Stat. 83-183.01(4). As to this withholding purpose, Jones is not similarly situated to inmates serving a life sentence. Inmates who will not be released do not need money withheld in preparation for discharge, while an inmate serving a term of years has a foreseeable need for such funds. NDCS's alleged policy of withholding wages from those serving a term of years until the time of discharge serves the "reasonably related to legitimate penological interests" of assisting inmates who will eventually be released from the facility, (Herlein v. Higgins, 172 F.3d 1089, 1090 (8th Cir. 1999)), and there is a rational reason why those serving a life sentence would be treated differently.

Jones has failed to state an equal protection claim related to the state's failure to reimburse wages withheld while he remains incarcerated. The allegation set forth in paragraph 41 of the complaint provides no basis for § 1983 recovery.

     j.   <u>Canteen Service Charge</u>

Jones alleges his constitutional rights were violated because the prison collects a 5% canteen service charge. Filing No. 113, ¶ 43. Neb. Rev. Stat. § 83-915.01 created the "Inmate Welfare and Club Accounts Fund," which is funded by revenue from soft drinks sold to inmates and profits from departmental canteens. Pursuant to statute, the intended use of these funds and any interest earned on the funds is to provide recreational activities and equipment for inmates at all NDCS correctional facilities. The service charge is assessed on canteen purchases voluntarily made by inmates, with the revenues earmarked for use by the NDCS inmate population. Imposing this service charge does not violate Jones's constitutional rights. Christiansen v. Clarke 147 F.3d 655, 657 (8th Cir. 1998)((rejecting

19

due process challenge to prison regulation imposing deduction for maintenance costs from prisoners' earnings in work release program); Myrie V. Commissioner, 267 F.3d 251 (3d Cir. 2001)(holding 10% canteen surcharge for victim's fund was not an excessive fine and did not violate the inmates' constitutional rights); Reynolds v. Wagner, 128 F.3d 166 (3d Cir. 1997)(holding charging a small co-payment for unnecessary prison medical care was not unconstitutional); Robinson v. Illinois State Correctional Ctr., 890 F. Supp. 715, 718 (D. Ill. 1995)(holding inmates have no constitutional right to purchase anything from a commissary); Chapdelaine v. Keller, 1998 WL 357350, *14 (N.D.N.Y. 1998)(holding that minimal over-pricing in the prison commissary did not rise to the level of a constitutional violation).

The allegation set forth in paragraph 43 of the complaint provides no basis for § 1983 recovery. Jones's claim for recovery based on this allegation must be dismissed.

IT IS ORDERED that:

1.    To the extent the plaintiff seeks certification of a class of all inmates confined in any facility of the Nebraska Department of Correctional Services from 1997 to the time he filed his amended complaint, this request is denied.

2.    The plaintiff's claims against defendants Houston, Hillman, Williams, Dr. With Correct Care Solutions, and "Named and Unnamed John and Jane Doe's 1 thru 1,000," in their official, individual capacities, and professional capacities are dismissed.

3.    The plaintiff's claims for relief based on the allegations in paragraphs 10, 14, 35, 38, 44, 45, 46, 47, 48, 49, 50, 51, 52, and 53, and exhibits 3 and 31 of his amended complaint, (Filing No. 113), are dismissed for lack of standing and lack of subject matter jurisdiction.

4.    To the extent paragraph 37 of the plaintiff's amended complaint, (Filing No. 113), alleges that TSCI inmates must stand in the cold and wind to receive medications, this claim is dismissed for lack of standing and lack of subject matter jurisdiction.

20

5.      Plaintiff's claim for § 1983 relief based on paragraphs 8,  9, 11, 12, 13, 16, 17, 18, 19, 20, 26, 27, 28, 29, 30, 31, 32, 33, 34, 39, 40, 41, 42, 43, and 54, and exhibits 1, 2, 4, 5, 6, 9, 10, 11, 12(A-I), 13, 19, 20(A-C), 22, 23, 24, 25, 26, 29(A-F), 30(A-J), and 31(A-D) of his amended complaint, (Filing No. 113), are dismissed for failure to state a claim.

6.      To the extent paragraph 36 of the plaintiff's amended complaint, (Filing No. 113), alleges the plaintiff's constitutional rights were violated by having to wait in line for twenty to thirty minutes to receive food, this claim is dismissed as frivolous.

7.      To the extent the plaintiff alleges his due process and equal protection rights were violated by the lock downs described in paragraphs 15, 21, 22, 23, 24, and 25, and exhibits 8, 14, 15, 16, 17, and 18 of the plaintiff's amended complaint, (Filing No. 113), these claims are dismissed for failure to state a claim.

8.      The plaintiff has stated a claim that his Eighth Amendment rights were violated by:

    a.      Denying him access to showers and the ability to clean his cell during the lock downs described in paragraphs 15, 21, 22, 23, 24, and 25, and exhibits 8, 14, 15, 16, 17, and 18 of the plaintiff's amended complaint, (Filing No. 113).

    b.      Failing to provide the plaintiff with adequate and uncontaminated food as alleged in paragraph 36 of the plaintiff's amended complaint, (Filing No. 113).

    c.      Requiring the plaintiff to be exposed to severe cold and wind without access to shelter as alleged in paragraph 37 of the plaintiff's amended complaint, (Filing No. 113).

9.      The Clerk of Court shall provide the plaintiff with two summonses and 285 forms and a copy of this order.  The plaintiff shall complete the summonses and 285 forms and return them to the Clerk of Court.

10.     Upon receipt of the completed summonses and 285 forms, the Clerk will sign each summons, to be forwarded, together with a copy of the amended complaint, (Filing No.113) **and a copy of this memorandum and order**, to the U.S. Marshal for service on the defendants.  The Marshal shall serve each summons and complaint without payment of costs or fees. Service may be effected by mail pursuant to Fed. R. Civ. P. 4 and Nebraska law in the discretion of the Marshal.

11.     The plaintiff is given until December 15, 2007, to serve defendant Francis Britten in his individual and official capacity.

12.     The Clerk of court is directed to set a pro se case management deadline in this case using the following text: December 15, 2007–deadline for serving plaintiff's amended complaint.

13.     The clerk shall correct the docket in this case to reflect that the plaintiff is Marvel Jones, and the defendant is Francis Britten in his individual and official capacity.  All future filings in this case shall be captioned as such.

DATED this 2nd day of November, 2007.

                    BY THE COURT:


                    s/Laurie Smith Camp
                    United States District Judge

22